**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | | |
|---|---|---|
| LARRY WAYNE JONES, | * | |
| ADC #70147 | * | |
|            Plaintiff, | * | |
| vs. | * | |
| | * | No. 5:08-cv-00233-SWW-JJV |
| RAY HOBBS, Chief Deputy Director, | * | |
| Arkansas Department of Correction; *et al.,* | * | |
| | * | |
|            Defendants. | * | |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk **no later than seven (7) days** from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or the District Judge. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I. INTRODUCTION

Before the Court is Defendant Sherry Conrad's Motion for Summary Judgment (Doc. No. 160). Plaintiff has filed a Response (Doc. No. 165) in opposition to the Motion and the matter is ripe for a decision.

### II. FACTS

Plaintiff, Larry Wayne Jones, is a state inmate at the Varner Super Max Unit of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983, alleging a violation of his First Amendment right to free speech. (Doc. No. 2.) Mr. Jones ordered two publications, which were shipped together in 2007 - *Hitler's Scientists* and *The Complete Guide to Home Wiring*. On arrival, the wiring book was identified as a possible security threat and mailroom staff referred it to the Unit Publication Review Committee and then to the ADC Publication Review Committee. (Doc. No. 162 at 2.) The other book was held in mailroom storage during this time. *Id.* The Review Committee determined the wiring book was a threat to security, and Ms. Conrad,

the mailroom supervisor, notified Plaintiff. Pursuant to ADC Policy, when one book in a shipment is rejected by the review committee, all books are deemed contraband. *Id.* Policy dictates that prison officials are not permitted to separate the original shipment of two books. So Plaintiff was not given the book, *Hitler's Scientists*, which, according to Mr. Jones, is the focus of this lawsuit. (Doc. Nos. 2 at 5; 162-1 at 7.) The Court notes that Plaintiff now asserts denial of both books is still at issue (Doc. No. 167 at 1) - contradicting his assertions during the deposition. Regardless, the Court recognizes Plaintiff's lawsuit challenges the constitutionality of the ADC Publications Policy.

According to policy, the rejected books could either be donated, returned to sender, destroyed, or sent to a third party at Plaintiff's expense. (Doc. No. 162-2 at 2.) When given these options, Plaintiff wanted the books sent to the Court. (*Id.* at 14.) The books were instead held in the ADC mailroom offices in anticipation of this litigation. (Doc. No. 162 at 2-3.)

Plaintiff first sued Warden Grant Harris and ADC Director Ray Hobbs. But at a hearing on Defendants' Motion for Summary Judgment on August 24, 2010, Plaintiff made an oral Motion to Amend and add as a Defendant Ms. Conrad, the mailroom supervisor. The Court granted this Motion on August 25, 2010. (Doc. No. 112.) Thereafter, the Court granted Warden Harris and Mr. Hobbs's Motion for Summary Judgment based on Plaintiff's failure to exhaust administrative remedies (Doc. No. 118). So the sole remaining claim is the First Amendment free speech claim against Ms. Conrad in both her personal and official capacities.

### III.   APPLICABLE LAW

#### A.   Summary Judgment

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate if the record shows that there

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulaney v. Carnahan*, 132 F.2d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Webb v. Lawrence Cnty.*, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

### B.   Qualified Immunity

Qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(the privilege is "*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether Defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." *Nelson v. Corr. Med. Services*, 583 F.3d 522, 528 (8th Cir. 2009).

Supreme Court precedent establishes:

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

1.   Was Plaintiff's First Amendment Right Violated?

After careful review of the pleadings and evidence of record and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to show any constitutional violation. Plaintiff admits receipt of *The Complete Guide to Home Wiring* posed a security risk and was properly withheld. (Doc. No. 167 at 1.) And ADC personnel have not denied Plaintiff *Hitler's Scientists*. Rather, they have simply followed policy and refused to separate a package containing both permissible and objectionable material.

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson*, 583 F.3d at 528 (quoting *Pearson*, 555 U.S. at 236).

Plaintiff readily admits he could reorder *Hitler's Scientists* at any time. (Doc. No. 162-1 at 22, 40.) But he refuses to reorder the book because he believes it is a "waste of money." (Doc. No. 162-1 at 22.) Mr. Jones explained, "I don't think that I should be required to waste money to buy a book that I should have been allowed to have in the first place, re-purchase it." *Id.* Plaintiff states, "[T]hey could and should have just given me - - they could just as easily given me the - - the book that was all right and just sent the bad book back." *Id.* at 7.

Indeed, if not for policies and procedures, ADC personnel could have separated the books. But the policy is implemented for consistency and to increase "the efficiency and economy of the prison mailroom system and protect[ion] [of] staff from liability issues and false claims." (Doc. No. 162 at 3.)

Plaintiff may have a good common sense argument against bureaucratic red-tape, but he is an inmate housed in the maximum security prison.[2] And while Plaintiff is able to "provide some evidence as to the feasibility of implementing a less restrictive means of achieving prison safety and security, it does not outweigh the deference owed to the expert judgment of prison officials who are infinitely more familiar with their own institutions than outside observers." *Hamilton v. Schriro*, 74 F.3d 1545, 1556 n.15 (8th Cir. 1996).

It is hard to imagine a legitimate reason for an inmate serving a life sentence in maximum security prison to receive a copy of *The Complete Book to Home Wiring*. So it is not surprising that

---

[2]In her Motion for Summary Judgment, Defendant Conrad argues that this matter is a property matter that would be more appropriately raised to the Arkansas Claims Commission. (Doc. No. 161, pp. 4-5.) Plaintiff wholly rejects this argument. (Doc. No. 167 at 2-3.) While the Court is unpersuaded that Plaintiff's case should be dismissed on this basis, this may well be the proper forum for Plaintiff to bring forth his claims that the policy caused him a "waste of money." No matter, Plaintiff has not advanced a constitutional claim.

Plaintiff concedes this book was properly withheld. (Doc. No. 167 at 5.) Neither is it surprising the Publications Policy prevented Plaintiff from receiving this book. Hence, it is difficult for this Court to conclude that a policy achieving an obvious result would somehow be unconstitutional. More importantly, Ms. Conrad played absolutely no role in creating the challenged policy. Therefore, even if the policy was unconstitutional, Plaintiff cannot show his rights were violated by Ms. Conrad for merely following the policy. The defendants responsible for the policy have been previously dismissed because Plaintiff failed to first challenge the policy through the prison's administrative procedures.

The Court has also considered Plaintiff's argument that the policy fails to give inmates enough warning about what books "may" be impermissible. *Id.* at 4-6. This argument is without merit. Plaintiff cites no authority that the constitution requires a "bright line" policy for prisoners to understand what books are permissible. Rather, authority supports the position that prison officials are given deference in managing security issues, *Hamilton v. Schriro*, 74 F.3d at 1556 n.15, and the Court is unwilling to conclude that the Publications Policy fails to meet constitutional muster. Accordingly, Plaintiff's claim against Ms. Conrad wholly fails to amount to an issue of constitutional magnitude.

### 2. Was This Right Clearly Established?

Even assuming *arguendo* that the policy infringed on Plaintiff's First Amendment right, Ms. Conrad should be granted qualified immunity on this second prong of the test. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). An objectively reasonable prison employee in Conrad's position could have believed that her enforcement of a policy based on safety and security at a maximum security prison was constitutional. (Doc. No. 162 at 3.)

Ms. Conrad's role was flagging the potentially objectionable wiring book and referring it to the publication review committee. (Doc. 162 at 2.) She held the other book, awaiting a determination from the review committee about the wiring book. *Id.* Ms. Conrad did not participate in the review committee and states she was only following policy. *Id.* In addition, this was the first challenge Plaintiff had made regarding the ADC policy, and Ms. Conrad had no prior notice that Mr. Jones might believe his constitutional rights had been violated. (Doc. No. 162-1 at 29-30.)

Plaintiff's argument regarding Ms. Conrad's lack of experience is well taken. (Doc. No. 167 at 6-7.) Considering her lack of experience would also incorrectly go toward an impermissible subjective analysis. Thus, the Court has not given consideration of this fact. Nevertheless, it was objectively reasonable for Ms. Conrad to follow policy in her capacity as mailroom supervisor, and she should be granted qualified immunity.

**C.   Official Capacity Claims**

Claims for monetary damages against a state actor acting in her official capacity are barred by sovereign immunity. *See Fegans v. Norris*, 537 F.3d 897, 908 (8th Cir. 2008)(state employees acting in official capacity are immune from civil suits for damages); *Hagemeier v. Block*, 806 F.2d 197, 203 (8th Cir. 1986) (sovereign immunity bars claims against officials in their official capacities). So the monetary claims against Ms. Conrad in her official capacity are barred.

A state actor, however, may be sued in her official capacity if the plaintiff seeks injunctive or prospective relief for a legally cognizable claim. *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989). Plaintiff, in fact, seeks injunctive relief in this matter (Doc. No. 2) and would not be barred by the Eleventh Amendment from seeking relief from Ms. Conrad in her official capacity. *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009). Except that, for the reasons outlined in this Proposed

Findings and Recommendation, the Court finds Plaintiff fails to state a constitutional claim. Thus, the official capacity claims against Ms. Conrad should also be dismissed.

## IV.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Ms. Conrad's Motion for Summary Judgment (Doc. No. 160) be GRANTED, and this matter be DISMISSED with prejudice.

SO ORDERED this <u>19th</u> day of March 2012.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE